Under the averments of the complaint the plaintiff would be entitled to give the necessary evidence to bring his case within the general rule.

The judgment sustaining the demurrer should therefore be reversed, with costs. All concur, except JENKS, J., who dissents.

(119 App. Div. 638)

ORENDORF v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1907.)

1. DEATH—LOSS RESULTING—EVIDENCE.

In an action by the widow, as administratrix of deceased, for his death by negligence, recovery in which is limited by the statute to "a fair and just compensation for the pecuniary injuries resulting from decedent's death, to the person or persons for whose benefit the action is brought," and in which only the widow and next of kin are interested, evidence, not merely of the fact that deceased had contributed nothing to the widow's support for 15 years, but that during all such time she had lived in adultery and prostitution, relieving him of liability to support her, is admissible.

2. TRIAL—ATTEMPTED WITHDRAWAL OF INSTRUCTIONS.

Withdrawal by the court of the objectionable portion of its charge, and instructing, at counsel's request, that the law is directly contrary to that previously charged, being qualified by the court's statement that his ideas of the case are entirely different from those of both of the counsel, whose views, however, he has just accepted and charged as the law, does not correct the original error.

3. SAME—ARGUMENT OF COUNSEL.

For plaintiff's counsel, in an action for death caused by defendant's train, to assert and persist in repeating in his argument, after being warned by the court that his statements were unwarranted, that defendant's engineers and firemen were murderers, is error.

Appeal from Trial Term, Herkimer County.

Action by Lucy Orendorf, administratrix of Henry Orendorf, deceased, against the New York Central & Hudson River Railroad Company. From a judgment on a verdict for plaintiff for $2,182, and from an order denying a motion for a new trial on the minutes and for an order setting aside said verdict, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles E. Snyder, for appellant.
Maurice A. Phelps, for respondent.

ROBSON, J. The cause of action, upon which plaintiff, as the administratrix of Henry Orendorf, whose widow she alleges she is, has recovered the judgment from which this appeal is taken, is based upon the claim that intestate's death was caused solely by the negligence of defendant. The answer raised the issues usual in such cases, and among those which were actively litigated was the question of the amount of damages which the widow and next of kin had in fact sustained by reason of intestate's death. Plaintiff claimed to be the widow of deceased; but it was admitted on the trial that they had

not lived together as husband and wife since 1890, and that from that time till his death deceased had contributed nothing to her support. In addition to this conceded fact, defendant sought to prove that plaintiff in 1890 had been adjudged a common prostitute, and as a result of the conviction had been committed to the House of Refuge for Fallen Women at Hudson, N. Y.; that after her release and return to her former home she lived in open adultery with different men; and that for three or four years before, and down to, and at the time of, decedent's death she had been living in open adultery with one Haley. Upon plaintiff's objection, each item of this proof, as offered, was excluded, and defendant duly excepted.

Though we do not necessarily adopt the rule, expressed by text-writers and recognized in some jurisdictions, that "in case of a wife who was openly adulterous and living apart from her husband at his decease no damages can be recovered," because, as it is urged, she is not under those circumstances entitled to the benefit of the statute, which was intended to protect honest widows and not as a reward of the harlot or adulteress, yet we conclude that this evidence was competent and its exclusion was error. It is but to quote from the statute, which furnishes the only basis for such actions, to say that the damages which can be awarded to plaintiff may be only such sum as is deemed "to be a fair and just compensation for the pecuniary injuries, resulting from decedent's death, to the person or persons for whose benefit the action is brought." In arriving at the amount of their award, the jury is supposed to be guided chiefly by their own good sense. Birkett v. Knickerbocker Ice Co., 110 N. Y. 504, 18 N. E. 108. But, as has been authoritatively said:

"They [the jury] are required to judge, and not merely to guess. Therefore such basis for their judgment as the facts naturally capable of proof can give should always be present, and is rarely, if ever, absent. * * * The damages to the next of kin in that respect [i. e., the value of a human life] are necessarily indefinite, prospective, and contingent. They cannot be proved with even an approach to accuracy, and yet they are to be estimated and awarded, for the statute has so commanded. But even in such a case there is and there must be some basis in proof for the estimate, and that was given here, and always has been given. Human lives are not all of the same value to the survivors. The age and sex of the person killed, the situation and condition of the survivors, and their relation to deceased furnish some basis for judgment." Houghkirk v. D. & H. C. Co., 92 N. Y. 219, 44 Am. Rep. 370.

The net result of this statement of the law seems to be that the estimate of the actual loss to the survivors by reason of the death of deceased should be gauged by proof on the trial, which so far as possible should disclose what, under all the circumstances, the deceased would probably have contributed to the financial and material benefit of the survivors, measured in money value, by the judgment of the jury thus enlightened. If this be a correct statement of the law, then it necessarily follows that every fact which tends to instruct the judgment as to the actual or probable material benefit which the survivors, entitled under the statute to share in a recovery of damages for the negligent killing of deceased, would have enjoyed, had the deceased lived, is material. It was evidently due to a recognition of this principle that the concession was made by plaintiff that deceased had not

contributed to her support since 1890. It is clear that this fact was material and relevant; and it seems that all circumstances connected with this material fact, either as an occasion of or reason for it, or as explanatory of its continuance as a condition governing the relations of the alleged widow and deceased during that time, would also be material. It is true that a husband is usually legally, as well as morally, bound to support his wife; and evidence limited to the fact of nonsupport, however long continued, might not be persuasive to a jury that the delinquent husband might not immediately recognize the obligation and again resume the relations which the law has imposed upon him. But, if it be shown that the cessation of all marital relations and renunciation of all marital obligations were coincident with, and apparently resultant from, the acknowledged, continuous, and open violation by the wife of her marital obligation and duty, then no such presumption could be properly indulged. No legal obligation rests upon a husband to support a wife who is living apart from him in open adultery. If that adulterous relation exists, then the right of the wife to support ceases; and no proceedings for divorce are necessary to clothe the husband with a defense to any proceeding, brought either by the delinquent wife or in the name of the people, to enforce a claim for support. People ex rel., etc., v. Shrady, 40 App. Div. 460, 58 N. Y. Supp. 143; Bishop on Marriage and Divorce, §§ 1228, 1230.

The evidence offered by defendant would have tended to prove, as supplementing the conceded fact that deceased had not contributed to the support of plaintiff for upwards of 15 years prior to his death, that she had by her own acts and conduct, continued to the day of his death, precluded herself from claiming from him any support during his life. The evidence was clearly of great importance in determining the loss which plaintiff, claiming to be his widow, had sustained by his death. The suggestion that the next of kin should not suffer by reason of the moral obliquity of the 'widow lacks convincing force, because we are not now concerned with the ultimate distribution of the recovery, if any should be had in this case, but only with the determination of the amount of actual damages which the widow and next of kin of deceased have suffered by his death, if defendant is liable to them for any amount. If no pecuniary loss has accrued to the widow by his death, or if that loss be less by reason of her own transgressions, then to that extent, at least, the amount for which defendant might otherwise be liable would be reduced; and defendant should be accorded the advantage of presenting these facts for the consideration of the jury, which it must under the circumstances be held the evidence offered would have shown.

Plaintiff's attorney bases his argument in support of the action of the trial judge in excluding the testimony to which reference has been made largely upon the fact that the plaintiff sues in a representative capacity, and urges that the rights and interests of possible creditors of deceased, as well as of a dependent relative, other than the alleged widow and next of kin, might suffer, if evidence as to the widow's indiscretions were admitted. It is doubtless a sufficient answer to that

suggestion that they are in no way interested in the recovery, **if any** shall eventually be had.

Defendant also assigns as error certain portions of the charge of the trial justice and certain expressions and statements made by him in connection therewith. It is necessary to refer to but one of these statements, to which exception was duly taken. Plaintiff's complaint, in charging defendant's negligence, to which it is alleged decedent's death was due, specifies as one feature thereof the alleged negligent and careless construction and maintenance of the gate at the crossing where decedent met his death. The learned trial justice charged the jury at length to the effect that they might find defendant negligent because it had not erected and maintained a gate in the street north of the Mohawk & Malone track, on which track decedent was killed. Exception by defendant was duly taken to this portion of the charge. The following colloquy between the court and counsel on the subject of the gates ensued:

"Defendant's Counsel: We ask your honor to charge the jury that, in view of the fact that the maintenance of the gate on the north side of the Mohawk & Malone track would necessarily bring the gate and posts some six feet into the traveled way in Albany street, the defendant, on account of the amount of travel of horses, teams, and vehicles at that place, cannot be charged with negligence in this case for not maintaining a gate on the north side of Albany street.

"The Court: I refuse to charge that.

"Defendant's Counsel: We except. We ask your honor to charge the jury that the defendant could not move its gates at the Albany street crossing to the north side of the Mohawk & Malone track without consent of the village of Herkimer.

"The Court: I refuse to charge that.

"Plaintiff's Counsel: We are not contending that the defendant was guilty of negligence for the erection of this gate at all. We do not stand on that. It is only the location of the gate in connection with its operation. Now, if the jury find that its location, in connection with this operation, on the night in question, was not negligent, that is the one question for the jury.

"The Court: If you desire it, I will withdraw all I have said on the question of the gate.

"Plaintiff's Counsel: I wish your honor would. That is all the question we make here. The defendant has a right to set its gates wherever it likes. We have nothing to do with the authorities of the village of Herkimer.

"The Court: On that suggestion I will withdraw all I have said on the subject of gates.

"Defendant's Counsel: We ask your honor to charge the jury that there is no liability on the part of the defendant in this case because the gates at Washington street were outside of the Mohawk & Malone track.

"Plaintiff's Counsel: That I am willing to have your honor charge.

"The Court: Well, my ideas of this case are entirely different from both of the counsel.

"Plaintiff's Counsel: If your honor will charge what I regard as the rule—

"The Court (interrupting): I understand your position. In order to be consistent, I shall have to charge that."

It is clear that plaintiff's counsel strove to correct the error into which he manifestly conceived the court had fallen in the body of his charge on this point. If the court had been content to adopt the suggestion, and had charged the proposition on this subject which counsel for plaintiff and defendant both requested, and had absolutely withdrawn the objectionable portions of the main charge without

further comment, it might perhaps be urged that the error had been corrected and that no available exception to the charge on that ground remained to defendant. But the court's withdrawal of the objectionable portion of the charge, and the instruction of the jury at counsel's request in effect that the law was directly contrary to the instructions on that subject already given by the court, was not distinct and absolute, but was qualified by the court's statement that the ideas he entertained were entirely different from those of both of the counsel, whose views, however, he had just accepted and charged as the law, which the jury were to apply in deciding the case. Such a qualified correction and retraction of an erroneous material statement in a charge does not correct the original error. In Meyer v. Clark, 45 N. Y. 285, the court said:

"A party is entitled to a distinct charge without qualification or condition, if entitled at all. A court has no right to break the force of a charge by saying that, true he will charge so, but still he does not believe it to be the law. The jury in such case may well act upon what the judge tells them he believes to be the law. They may well say, the judge told us he believed that to be the law; that he had no doubt of it. Of course, he knows what the law is. Why, then, should we not act upon the law as it is."

As in the case from which we have just quoted, the one we are now considering presented a close question of fact. The jury might, on all the evidence, excluding the question of location of defendant's gates at this crossing as an element upon which a finding of defendant's negligence could properly be predicated, have found that defendant was not negligent in its management of the engine which killed the deceased. It is impossible to say they were not influenced to defendant's prejudice in deciding this question by the charge of the trial court on that subject and the subsequent discussion of court and counsel to which we have referred.

As the judgment and order appealed from must be reversed for errors in the trial to which we have already referred, it is unnecessary to make more than a passing reference to the unwarranted assertion, made by plaintiff's counsel when submitting his client's case to the jury, that the defendant's engineers and firemen were murderers. Counsel persisted in repeating, in effect at least, this totally indefensible charge, even after he had been warned by the court that his statements were improper and the jury had been instructed to disregard them. We wish emphatically to express our disapproval of the action of counsel in this regard; and, if there were no other ground upon which a reversal of the judgment should be based, this alone would, in our judgment, amply suffice.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

New trial granted, with costs to appellant to abide the event. All concur.